99 F.3d 400
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Henry MATTHEWS, Plaintiff-Appellant
v.
Donald SELSKY, Director of Special Housing/Inmate
Discipline; Leon Sandmann, Corrections
Lieutenant, Defendants-Appellees.
 No. 95-2046.
 United States Court of Appeals, Second Circuit.
 Dec. 8, 1995.
 
 APPEARING FOR APPELLANT: EVAN A. SHOWELL, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY.
 APPEARING FOR APPELLEE: THOMAS H. HANNA, JR., Assistant Attorney General of the State of New York, New York, NY.
 S.D.N.Y.
 AFFIRMED.
 Present FEINBERG, JACOBS, CABRANES, Circuit Judges.
 
 
 1
 Appeal from the United States District Court for the Southern District of New York (Sprizzo, Judge).
 
 
 2
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 3
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 4
 Henry Matthews appeals from dismissal of his complaint by the district court on his section 1983 claim against Donald Selsky, the Commissioner of the Department of Correctional Services, and Leon Sandmann, a corrections officer. For the reasons set forth below, we affirm the judgment of the district court.
 
 
 5
 Matthews is an inmate at the Sing Sing Correctional Facility in New York. On April 28, 1990, Matthews was tested for drug use and tested positive for marijuana; he subsequently pled guilty to drug use in violation of prison rules.
 
 
 6
 On May 16, 1990, Matthews was tested again, and again he tested positive for marijuana. At the disciplinary hearing on June 16, 1990, over which Sandmann presided, Matthews pled innocent, claiming he had not used marijuana since the end of April. More specifically, Matthews argued that marijuana can remain in the body for up to thirty days; the interval between his two urine samples was eighteen days. Sandmann called for the testimony of Flores, a corrections officer and the technician who administered the second drug test. Flores testified that the remains of one marijuana joint can stay in the body for two to three days, but a chronic user (five joints a day) might have marijuana in the system for up to fourteen days. Matthews denied he was a chronic user, but he said the one day he smoked the marijuana leading to the first positive test, he smoked "a whole lot." Shortly after Flores's testimony, Sandmann adjourned the hearing because Matthews had been informed of a death in the family.
 
 
 7
 When the hearing resumed the next day, Matthews maintained his argument that marijuana may remain in the body for up to thirty days and that he had seen "material not only in legal publications but in the Times newspaper, scientific sections" to this effect. Matthews then asserted that "the only way to resolve this difference between what [Flores] says and what I am ascertaining [sic] right now is to call the company and get a verification as to how long this cannabis system ... is known to stay inside the body." The "company" is Syva Company ("Syva"), which makes the drug-testing equipment. Sandmann refused plaintiff's request to contact Syva.
 
 
 8
 Thereafter, Sandmann found Matthews guilty of drug use in violation of prison rules and sentenced him to 100 days "keeplock" with loss of commissary, packages, and phone privileges with four months recommended loss of good time. The disposition was affirmed by the Department of Correctional Services on September 10, 1990.
 
 
 9
 Matthews challenged Sandmann's decision and sentence in an article 78 proceeding in New York State Supreme Court. In a decision dated May 9, 1991, the state court found plaintiff had been denied due process under federal and New York law, and it ordered the judgment vacated and expunged from plaintiff's record.
 
 
 10
 Matthews next commenced this section 1983 action against Selsky and Sandmann, seeking damages resulting from his punishment (which he had served), on the ground that he had been denied due process. The district court dismissed the claim.
 
 
 11
 The district court granted defendants summary judgment on the basis of qualified immunity, because there was a genuine question as to whether an inmate has the right to call witnesses from outside the prison population for purposes of a disciplinary hearing. We need not decide whether this inside/outside distinction is a sound basis for determining whether due process has been satisfied, because we affirm the district court's judgment on a different ground.
 
 
 12
 Aside from qualified immunity, the defendants' chief argument is that Matthews requested a witness from Syva at the "eleventh hour." Matthews rejoins that he sought Syva as a rebuttal witness against Flores' testimony, and that he could not have known before the hearing that Syva's testimony would be needed. This argument assumes (a) that Matthews had no alternative way to present his point; (b) that he was entitled to call a Syva witness for his stated purpose; and (c) that he could not have anticipated his need for Syva's testimony until after Flores's testimony. We reject each of these contentions.
 
 
 13
 (a) Matthews does not claim that he was a "false positive," or, to put it another way, that the testing equipment was faulty. Perhaps Syva would be the only witness competent to testify on such a point. However, Matthews' claim is that, as a matter of scientific fact, marijuana may remain in the body for eighteen days after use. Matthews says he knows this because he works in the prison law library and has read this in "legal publications" and "the Times newspaper, scientific sections." Thus, Matthews cannot claim that Syva's testimony was indispensable.
 
 
 14
 (b) By the same token, Matthews was not seeking a witness in the sense of an eyewitness to events; he was seeking expert testimony, which he could have obtained from any number of oral or written sources. This further rebuts Matthews' own claim that the "only" way to ascertain how long marijuana remains in the body is to ask Syva. Litigants in courts of law do not have the right to call a particular expert witness on their behalf; there is no reason to conclude that prisoners have any additional entitlement in this respect.
 
 
 15
 (c) Contrary to Matthews' assertion that Syva would have been a rebuttal witness, Matthews has maintained his particular defense from the very beginning. Virtually the first argument out of Matthews' mouth at the hearing--before Flores was called to testify--was that marijuana can stay in the body for up to thirty days, but "they use 14 as a medium." It is therefore demonstrated that, before the hearing, Matthews knew (1) that he had tested positive for marijuana; (2) that he had given positive urine samples eighteen days apart; and (3) that technicians generally infer from a positive test result that marijuana was used within the previous fourteen days. Thus plaintiff went into his hearing prepared to make the specific defense that marijuana may linger in the body for more than fourteen days, and he knew (or should have known) that this contention would not be the subject of a stipulation and would therefore require proof. Matthews did not have to await Flores's testimony to know that he would need any support for his claim, much less Syva's.
 
 
 16
 For the reasons set forth above, we affirm the judgment of the district court.